*Municipal Court of the City of Boston*

No. 16377

**J. SLOTNICK COMPANY**

**v.**

**A. BELANGER & SONS, INC.**

**and**

**TRAVELERS INDEMNITY COMPANY**

(May 13, 1960 — May 1, 1961)

*Present:* Roberts J. (Presiding), Fox and Glynn, JJ.

Case tried to *Doherty, Sp. J.*

*Glynn, J.* This is a suit for alleged breach of an indemnity bond given to the plaintiff on May 27, 1957. The defendant, A. Belanger was a sub-contractor for the plaintiff. in Maine, and Belanger in turn hired a sub-contractor named Giannelli. Giannelli subsequently sued both the plaintiff and Belanger in the Federal District Court for Maine. The defendant Traveler's Insurance Co. refused to defend the Maine suit as to the plaintiff and the plaintiff now sues for reimbursement for $607.00, the agreed amount of legal fees and expenses incurred in the Maine suit by the plaintiff up to the point the Maine suit was discontinued as to the plaintiff.

At the time of trial of this matter an Agreed Statement of Facts was admitted by all parties hereto and also certain oral testimony was admitted.

Under date of May 22, 1956 the plaintiff, J. Slotnick Company, (hereinafter referred to as Slotnick) entered into a contract with the U. S. Army Corps of Engineers for the construction of an Operations Building ad-

dition at Brunswick Air Force Station at Brunswick, Maine, the Maryland Casualty Company being surety to Slotnick on a payment bond in regard to said work. Under date of June 25, 1956 A. Belanger & Sons, Inc., (hereinafter referred to as Belanger) entered into a subcontract with Slotnick for the installation of a ventilating system at said work. Under date of June 25, 1956 Louis J. Giannelli Co., Inc. (hereinafter referred to as Giannelli) entered into a subcontract with Slotnick to do certain electrical work. Under date of January 8, 1957 Belanger and Giannelli entered into a contract whereby Giannelli was to perform certain electrical work for Belanger in reference to the installation of the ventilating system. In May of 1957 Belanger requested final payment from Slotnick on its subcontract and Slotnick at that time required an indemnity bond from Belanger prior to payment as a result of which Belanger delivered to Slotnick an indemnity bond dated May 27, 1957 on which bond the Travelers Indemnity Company (hereinafter referred to as Travelers) was the surety. On May 28, 1957 Slotnick paid Belanger, and on July 2, 1957 Giannelli sent notice to Slotnick and Maryland under the Miller Act. On December 9, 1957 Slotnick paid Giannelli $16,766.47. On March 7, 1958 Giannelli commenced suit in the U. S. District Court for the District of Maine against Belanger, Slotnick and Maryland following which Slotnick demanded of Belanger and

Travelers that they defend this latter suit which at that time Belanger and Travelers refused to do, but which defense they subsequently undertook on August 7, 1958. Between March 7, 1958 and August 7, 1958 Slotnick incurred expenses for legal fees and disbursements in connection with the Giannelli suit in the amount of $602.73 which latter sum, it was agreed, constituted the reasonable value of said services and disbursements. Slotnick then demanded of Belanger and Travelers to be reimbursed in the amount of $602.73, but Belanger and Travelers declined to so do.

Oral evidence was also introduced at the time of trial in reference to time allegedly expended by an officer of Slotnick in regard to the suit by Giannelli.

At the close of the trial and before the final argument the defendants made the following requests for rulings:

1. As a matter of law, the suit as filed in Maine by Giannelli asserted a claim against Slotnick arising out of Belanger's subcontract and a claim against Slotnick which did not arise out of Belanger's Subcontract.

2. As a matter of law, the suit as filed in Maine by Giannelli included a claim against Slotnick other than based solely on Slotnick's position as prime contractor.

3. As a matter of law, Belanger and Travelers had no obligation under their bond to defend a

claim asserted against Slotnick which did not arise out of Belanger's subcontract.

4. As a matter of law, the court would be warranted in finding that the suit as filed in Maine by Giannelli included a claim against Slotnick which did not arise out of Belanger's subcontract.

The court allowed defendant's request for ruling No. 3 and as to defendant's requests for rulings 1, 2 and 4 took the following action with reference to said requests: "Denied, See Findings of Fact". The court entered a finding for the plaintiff in the sum of $602.00 and further found the following facts:

"1. That the suit in Maine brought by Giannelli against Slotnick and Belanger was one within the terms of the bond furnished by the defendant, Belanger and Travelers.

2. As a result of the failure and for the neglect of the defendant Belanger and the Travelers to defend the Maine suit the plaintiff did retain the services of counsel.

3. The defendant Belanger and Travelers are liable for the expenses of plaintiff's counsel in said court.

4. The court finds that the reasonable value of such legal suit is $602.00."

It is significant that the difficulty in this case arises out of the fact that Giannelli, the sub-contractor, in addition to the contract with Belanger, also had a contract directly with the plaintiff dated June 25, 1956

(Agreed Statement of Fact No. 5). This contract was paid in full by the plaintiff by a check dated December 9, 1957 (No. 10 of Agreed Statement of Facts). See also Exhibit No. 4 which invoice was endorsed "payment in full of contract and extras and full and final settlement of all claims *except* that of A. Belanger & Son, Inc." (emphasis supplied).

What was the purpose of the plaintiff requiring a bond of indemnification from Belanger before final payment on May 28, 1947? The reading of the bond certainly indicated that the parties had in mind any suit that may be brought under the Miller Act. (Act of August 24, 1935, c. 642, U.S.C. 4th 40 c. 3 §b (b).) This Act allows any supplier, sub-contractor or sub-subcontractor who has not been paid for work or material on a federal project to such payment from the prime contractor without any privity of contract, provided said claim is brought in accordance with the provisions of this act. Paragraph 5 of the Indemnity Bond certainly sets forth in uncontradictory terms that the defendants would not only hold the plaintiff harmless from any loss, cost, damage or expense arising out of the aforesaid contract, but also agree to defend, etc.

The reading of the bill of complaint filed by Giannelli in the Maine suit, particularly paragraphs 5, 6, 7 and 8, clearly warrant a finding that this was a suit under the Miller

Act. The privity of contract existed between Slotnick and Belanger only. Such a suit as filed by Giannelli was within the intended scope of the indemnity bond.

There were many letters between counsel for the parties that indicate that the plaintiff Slotnick was not a party in contractual privity to the claim of Giannelli. The suit in Maine terminated as far as Slotnick was concerned, with a discontinuance as to Slotnick.

There is also the further evidence that whatever direct contractual privity existing between Slotnick and Giannelli was terminated by the payment of the check dated December 9, 1957. The wording on the invoice covering this payment clearly indicated that at that time there was existing some dispute between Giannelli and Belanger.

Considering all the evidence the trial judge was warranted in finding that the suit in Maine was one within the scope of the indemnity bond. *Fessenden School v. American Mut. Ins. Co.,* 289 Mass. 124. This decision was based on the fact that the "employee" had chosen to sue at common law under landlord-tenant or lodger relationship. The policy in issue was described as "Standard Workman's Compensation and Employees Liability Policy". The court ruled that the policy was an agreement to defend the plaintiff as an "employee". This case is relied upon by both parties in the case at bar. It is to be noted that the bond given in this case states that

"Now therefore, in consideration of the payment by J. Slotnick Co. to A. Belanger & Son, Inc. of the sum of $15,000 (plus or minus) the said A. Belanger & Son, Inc. as principal and the Traveler's Indemnity Co. as Surety, do hereby indemnify and hold harmless the said J. Slotnick Co. aforesaid their successors or assigns from any loss, cost, damage or expense arising out of the aforesaid contract, and agree to defend and/or actions at law to the end that all liability of the J. Slotnick Co. therefor shall be discharged."

This indemnity bond is certainly broader in scope than the workman's compensation policy cited in the *Fessenden* case. All the parties hereto were cognizant of the fact that claims could or may arise under the Miller Act. There is no doubt that such consideration was made by the parties hereto at the time of the execution of the indemnity bond.

There was no need of such a bond to secure the payment made by Slotnick to Belanger unless all the parties hereto had in mind a suit such as was brought in the Maine Federal Court by the subcontractor Giannelli against Slotnick and Belanger. This was certainly within the scope of the bond. In *Miller v. U. S. F & G Co.,* 291 Mass. 445, the defendant issued motor vehicle liability policy containing provisions for property damage and extra-territorial liability by which the defendant agreed to pay all sums for personal

injuries caused by plaintiff's motor vehicle within continental limits of the United States. The plaintiff cut off another motorist intentionally, causing the other car to go off the road in Georgia causing injuries to two persons in the car. Suit was brought against the plaintiff in Florida and the plaintiff seasonably notified the defendant of claim. The defendant refused to defend the action and plaintiff sued to recover the amount of judgment plus costs. The suit in Florida alleged negligence.

The Supreme Court said in this case, "Where an action against the insured is ostensibly within the terms of the policy, the insurer, whether it assumes the defense or refuses to assume it, is bound by the result of that action as to all matters therein decided which are material to recovery by the insured in an action on the policy."

In view of the findings of fact made by the trial judge, there is no error in the denial of requests Nos. 1, 2 and 4 as filed by the defendant. *Bresnick v. Heath,* 292 Mass. 293; *Hoffman v. Chelsea,* 315 Mass. 54.

Finding No. 1 states that "the suit in Maine brought by Giannelli against Slotnick and Belanger was one within the terms of the bond furnished by the defendant Belanger and Travelers."

This finding of fact is specific and warranted and as such it renders the request im-

material and there is no prejudicial error.

*Report dismissed.*

(Fox, J. did not participate.)

Philip M. Cronin of Boston, for the Plaintiff, as to the obligation of the obligor and the surety to defend the suit brought against the plaintiff-obligee cited:

50 A. L. R. 2d 465:

"The obligation of a liability insurance company under a policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint in such action."

*Fessenden School v. American Mutual Liability Insurance Co.*, 289 Mass. 124, 130:

"The obligation of the defendant insurance company is to be determined by the allegations of the declaration."

*Saragan v. Bousquet*, 322 Mass. 14; *Miller v. United States Fidelity*, 291 Mass. 445; *Klefbeck v. Dores*, 302 Mass. 383; *Lee v. Aetna Casualty & Surety Co.*, 178 F. 2d (2nd Cir.) 750, 751:

"It is the claim which determines the insurer's duty to defend, and it is irrelevant that the insurer may get information from the insured, or from anyone else, which indicates, or even demonstrates, that the injury is not in fact 'covered'."

(Page 753):
"It follows that, if the plaintiff's complaint against the insured alleged facts which would have

supported a recovery by the policy, it was the duty of the defendant to undertake the defense, until it could confine the claim to a recovery that the policy did not cover."

Since defendants had an obligation to defend, they are liable for legal fees and expenses incurred in defending the suit. *Mandell v. Fidelity & Casualty Co.*, 170 Mass. 173.

James G. Fay of Boston, for the Defendants.